UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | | |
|---|---|---|
| RELIANT PRO REHAB, LLC | ) | |
| | ) | JURY TRIAL DEMANDED |
| PLAINTIFF | ) | |
| | ) | CIVIL ACTION NO. 8:16-cv-03287-MSS-MAP |
| v. | ) | |
| | ) | |
| BENJAMIN ATKINS; REMKO VAN DER | ) | |
| VOORDT; THE REHAB DEPARTMENT, | ) | |
| LLC; TRADITIONS SENIOR | ) | |
| MANAGEMENT, INC.; LA | ) | |
| MANAGEMENT HOLDINGS, LLC; | ) | |
| BOTETOURT HEALTH CARE, LLC; | ) | |
| CHESAPEAKE REHABILITATION | ) | |
| & CARE CENTER, LLC; ESSEX REHAB | ) | |
| & CARE CENTER, LLC; BIRDMONT | ) | |
| HEALTH CARE, LLC; CPLACE | ) | |
| UNIVERSITY SNF, LLC; CPLACE | ) | |
| TIMBERWOOD SNF, LLC; CPLACE | ) | |
| SPRINGHILL SNF, LLC; CPLACE | ) | |
| COLONIAL RC, LLC; CPLACE FOREST | ) | |
| PARK SNF, LLC; CPLACE UNITY SNF, | ) | |
| LLC and CPLACE BATON ROUGE | ) | |
| SNF, LLC | ) | |
| | ) | |
| DEFENDANTS | ) | |

---

**SECOND AMENDED COMPLAINT**

---

Plaintiff, Reliant Pro Rehab, LLC, pursuant to the Court's Order of April 26, 2017 (DN 68),

states as follows for its Second Amended Complaint against Defendants, Benjamin Atkins, Remko

van der Voordt, Traditions Senior Management, Inc., LA Management Holdings, LLC, Botetourt

Health Care, LLC, Chesapeake Rehabilitation & Care Center, LLC, Essex Rehab & Care Center,

LLC, Birdmont Health Care, LLC, CPlace University SNF, LLC, CPlace Timberwood SNF, LLC,

CPlace Springhill SNF, LLC, CPlace Colonial RC, LLC CPlace Forest Park SNF, LLC, CPlace Unity

SNF, LLC, and CPlace Baton Rouge SNF, LLC:

<u>**PARTIES**</u>

1.      Reliant Pro Rehab, LLC ("Reliant") is a Delaware limited liability company.  Its principal place of business is in Texas.  Its sole equity member is Reliant Rehabilitation Holdings, Inc., which is a Delaware corporation with a principal place of business in Texas.

2.      Benjamin Atkins is an individual who resides in Florida.  Mr. Atkins has entered an appearance in this matter through his attorney of record, Shirin M. Vesely, who will receive notice of this Second Amended Complaint via the Court's CM/ECF system.

3.      Remko van der Voordt is an individual who resides in Florida.  Mr. van der Voordt has entered an appearance in this matter through his attorney of record, Shirin M. Vesely, who will receive notice of this Second Amended Complaint via the Court's CM/ECF system.

4.      The Rehab Department, LLC ("Rehab Department") is a Wyoming limited liability company with its principal place of business in Florida.  Upon information and belief, its equity member is an individual who resides in Florida.  Rehab Department has entered an appearance in this matter through its attorney of record, Shirin M. Vesely, who will receive notice of this Second Amended Complaint via the Court's CM/ECF system.

5.      Traditions Senior Management, Inc. ("Traditions") is a Nevada corporation with its principal place of business in Florida.  Traditions has entered an appearance in this matter through its attorney of record, Shirin M. Vesely, who will receive notice of this Second Amended Complaint via the Court's CM/ECF system.

6.      LA Management Holdings, LLC ("LA Management") is a Florida limited liability company with its principal place of business in Florida.  Upon information and belief, LA Management is owned by West Coast Commonwealth Partners, LLC which is owned by LTC Diversified California Holdings, LLC.  Upon information and belief, the equity member of LTC Diversified California Holdings, LLC is an individual who resides in Florida.  LA Management has

2

entered an appearance in this matter through its attorney of record, Shirin M. Vesely, who will receive notice of this Second Amended Complaint via the Court's CM/ECF system.

7.     Botetourt Health Care, LLC d/b/a Carrington Place at Botetourt Commons ("Botetourt") is a Virginia limited liability company with a principal place of business in Florida. Upon information and belief, Botetourt is owned by West Coast Commonwealth Partners, LLC which is owned by LTC Diversified California Holdings, LLC. Upon information and belief, the equity member of LTC Diversified California Holdings, LLC is an individual who resides in Florida. Botetourt has entered an appearance in this matter through its attorney of record, Shirin M. Vesely, who will receive notice of this Second Amended Complaint via the Court's CM/ECF system.

8.     Chesapeake Rehabilitation & Care Center, LLC d/b/a Carrington Place of Chesapeake ("Chesapeake") is a Virginia limited liability company with a principal place of business in Florida. Upon information and belief, Chesapeake is owned by Creative Care Resources, LLC, Careen, LLC, and West Coast Commonwealth Partners, LLC. The latter entity is owned by LTC Diversified California Holdings, LLC. Upon information and belief, the equity member of LTC Diversified California Holdings, LLC, Creative Care Resources, LLC, and Careen, LLC is an individual who resides in Florida. Chesapeake has entered an appearance in this matter through its attorney of record, Shirin M. Vesely, who will receive notice of this Second Amended Complaint via the Court's CM/ECF system.

9.     Essex Rehab and Care Center, LLC d/b/a Carrington Place of Tappahannock ("Essex") is a Virginia limited liability company with a principal place of business in Florida. Upon information and belief, the equity member of Essex is Mr. Atkins, who resides in Florida. Essex has entered an appearance in this matter through its attorney of record, Shirin M. Vesely, who will receive notice of this Second Amended Complaint via the Court's CM/ECF system.

3

10.     Birdmont Health Care, LLC d/b/a Carrington Place at Wytheville ("Birdmont") is a Virginia limited liability company with its principal place of business in Florida.  Upon information and belief, Birdmont is owned by West Coast Commonwealth Partners, LLC which is owned by LTC Diversified California Holdings, LLC.  Upon information and belief, the equity member of LTC Diversified California Holdings, LLC is an individual who resides in Florida.  Birdmont has entered an appearance in this matter through its attorney of record, Shirin M. Vesely, who will receive notice of this Second Amended Complaint via the Court's CM/ECF system.

11.     CPlace University SNF, LLC d/b/a Affinity Nursing and Rehab Center ("University") is a Louisiana limited liability company with a principal place of business in Louisiana.  Upon information and belief, University is owned by West Coast Commonwealth Partners, LLC which is owned by LTC Diversified California Holdings, LLC.  Upon information and belief, the equity member of LTC Diversified California Holdings, LLC is an individual who resides in Florida.  University has entered an appearance in this matter through its attorney of record, Shirin M. Vesely, who will receive notice of this Second Amended Complaint via the Court's CM/ECF system.

12.     CPlace Timberwood SNF, LLC d/b/a Carrington Place of New Orleans ("Timberwood") is a Louisiana limited liability company with a principal place of business in Louisiana.  Upon information and belief, Timberwood is owned by West Coast Commonwealth Partners, LLC which is owned by LTC Diversified California Holdings, LLC.  Upon information and belief, the equity member of LTC Diversified California Holdings, LLC is an individual who resides in Florida.  Timberwood has entered an appearance in this matter through its attorney of record, Shirin M. Vesely, who will receive notice of this Second Amended Complaint via the Court's CM/ECF system.

13.     CPlace Springhill SNF, LLC d/b/a Carrington Place of Springhill ("Springhill") is a Louisiana limited liability company with a principal place of business in Louisiana.   Upon

information and belief, Springhill is owned by West Coast Commonwealth Partners, LLC which is owned by LTC Diversified California Holdings, LLC.  Upon information and belief, the equity member of LTC Diversified California Holdings, LLC is an individual who resides in Florida. Springhill has entered an appearance in this matter through its attorney of record, Shirin M. Vesely, who will receive notice of this Second Amended Complaint via the Court's CM/ECF system.

14.     CPlace Colonial RC, LLC d/b/a Colonial Care Retirement Center ("Colonial") is a Louisiana limited liability company with a principal place of business in Louisiana.  Upon information and belief, Colonial is owned by West Coast Commonwealth Partners, LLC which is owned by LTC Diversified California Holdings, LLC.  Upon information and belief, the equity member of LTC Diversified California Holdings, LLC is an individual who resides in Florida. Colonial has entered an appearance in this matter through its attorney of record, Shirin M. Vesely, who will receive notice of this Second Amended Complaint via the Court's CM/ECF system.

15.     CPlace Forest Park SNF, LLC d/b/a Nottingham Regional Rehab Center ("Forest Park") is a Louisiana limited liability company with a principal place of business in Louisiana.  Upon information and belief, Forest Park is owned by West Coast Commonwealth Partners, LLC which is owned by LTC Diversified California Holdings, LLC.  Upon information and belief, the equity member of LTC Diversified California Holdings, LLC is an individual who resides in Florida. Forest Park has entered an appearance in this matter through its attorney of record, Shirin M. Vesely, who will receive notice of this Second Amended Complaint via the Court's CM/ECF system.

16.     CPlace Unity SNF, LLC d/b/a Unity Nursing and Rehab Center ("Unity") is a Louisiana limited liability company with a principal place of business in Louisiana.  Upon information and belief, Unity is owned by West Coast Commonwealth Partners, LLC which is owned by LTC Diversified California Holdings, LLC.  Upon information and belief, the equity

member of LTC Diversified California Holdings, LLC is an individual who resides in Florida. Unity has entered an appearance in this matter through its attorney of record, Shirin M. Vesely, who will receive notice of this Second Amended Complaint via the Court's CM/ECF system.

17.     CPlace Baton Rouge SNF, LLC d/b/a Carrington Place of Baton Rouge ("Baton Rouge") is a Louisiana limited liability company with a principal place of business in Louisiana. Upon information and belief, Baton Rouge is owned by West Coast Commonwealth Partners, LLC which is owned by LTC Diversified California Holdings, LLC. Upon information and belief, the equity member of LTC Diversified California Holdings, LLC is an individual who resides in Florida. Baton Rouge has entered an appearance in this matter through its attorney of record, Shirin M. Vesely, who will receive notice of this Second Amended Complaint via the Court's CM/ECF system.

## JURISDICTION AND VENUE

18.     This Court has personal jurisdiction over Defendants because they transact business in Florida and invoked the jurisdiction of this Court with their motion to transfer.

19.     This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 in that there is complete diversity of citizenship of the parties and the amount in controversy collectively exceeds $75,000, exclusive of interests and costs.

20.     Venue is proper in this Court because a substantial part of the events and omissions giving rise to Reliant's claims occurred in this district and division and because Defendants are subject to personal jurisdiction in this district. Moreover, Defendants sought transfer to this venue.

## FACTUAL BACKGROUND

21.     Reliant provides rehabilitation management services to acute-care hospitals, skilled nursing facilities, subacute facilities, long-term acute-care hospitals, rehabilitation hospitals, and

continuing care retirement communities. These services include professional staffing in various medical environments.

22.     In or around 2012, Reliant entered into a contract with Botetourt as amended from time to time, to provide services to residents of Botetourt's facility (the "Botetourt Agreement").

23.     In or around 2012, Reliant entered into a contract with Chesapeake as amended from time to time, to provide services to residents of Chesapeake's facility (the "Chesapeake Agreement").

24.     In or around 2012, Reliant entered into a contract with Essex as amended from time to time, to provide services to residents of Essex's facility (the "Essex Agreement").

25.     In or around 2012, Reliant entered into a contract with Birdmont as amended from time to time, to provide services to residents of Birdmont's facility (the "Birdmont Agreement").

26.     In or around 2012, Reliant entered into a contract with University as amended from time to time, to provide services to residents of University's facility (the "University Agreement").

27.     In or around 2012, Reliant entered into a contract with Timberwood as amended from time to time, to provide services to residents of Timberwood's facility (the "Timberwood Agreement").

28.     In or around 2012, Reliant entered into a contract with Springhill as amended from time to time, to provide services to residents of Springhill's facility (the "Springhill Agreement").

29.     In or around 2012, Reliant entered into a contract with Colonial as amended from time to time, to provide services to residents of Colonial's facility (the "Colonial Agreement").

30.     In or around 2012, Reliant entered into a contract with Forest Park as amended from time to time, to provide services to residents of Forest Park's facility (the "Forest Park Agreement").

31.     In or around 2012, Reliant entered into a contract with Unity as amended from time to time, to provide services to residents of Unity's facility (the "Unity Agreement").

32.     In or around 2012, Reliant entered into a contract with Baton Rouge as amended from time to time, to provide services to residents of Baton Rouge's facility (the "Baton Rouge Agreement").

33.     Collectively, Botetourt, Chesapeake, Essex, Birdmont, University, Timberwood, Springhill, Colonial, Forest Park, Unity, and Baton Rouge are the "Facility Defendants."

34.     Collectively, the Botetourt Agreement, Chesapeake Agreement, Essex Agreement, Birdmont Agreement, University Agreement, Timberwood Agreement, Springhill Agreement, Colonial Agreement, Forest Park Agreement, Unity Agreement, and Baton Rouge Agreement are the "Agreements."

35.     At all relevant times, Mr. Atkins was an officer, member, shareholder or controlling person of Traditions and LA Management and exercised control over the operation of Traditions and LA Management.  At all relevant times, Traditions and LA Management managed the Facility Defendants and exercised control over the operations of the Facility Defendants.

36.     At all relevant times, Mr. van der Voordt was an officer, member or controlling person of the Rehab Department and exercised control over the operation of the Rehab Department.

37.     The Agreements each provide that the rates and other information contained therein are confidential and Facility Defendants agreed not to share that information with third parties.

38.     The Agreements each contain noncompetition and nonsolicitation provisions that provide that the Facility Defendants cannot hire Reliant's therapy personnel without compensation to Reliant.

39.     Reliant performed all obligations required of it under the Agreements, as modified from time to time, submitted monthly invoices, and otherwise satisfied all conditions precedent to payment.

40. Pursuant to the Agreements and Reliant's performance thereunder, Facility Defendants are obligated to pay for the services provided by Reliant. Moreover, under the Agreements, the Facility Defendants agreed not to directly or indirectly recruit or solicit Reliant's therapy personnel.

41. Despite repeated demands for the sums due and owing under the Agreements, Facility Defendants have failed and refused to pay for services provided by Reliant. The outstanding balance is accruing interest pursuant to the terms of the Agreements.

42. Reliant conferred with Defendants numerous times regarding the outstanding invoices for services provided and amounts past due and made repeated demands for payment.

43. During conferences between Reliant and Defendants, Defendants represented to Reliant that the outstanding invoices would be paid and requested that Reliant continue to provide services.

44. Despite Reliant's billing, repeated demands for the sums due and owing, and conferences regarding amounts outstanding, Defendants have failed to pay for services provided by Reliant.

45. Unbeknownst to Reliant, Mr. Atkins – with Mr. van der Voordt's consent and urging – provided Reliant's confidential billing information to Mr. van der Voordt as early as January 2015. Mr. van der Voordt used that information to prepare proposals so that he (or entities under his control, including the Rehab Department) could obtain the therapy business of the Facility Defendants.

46. Over a period of months from January 2015 through August 2015, while Mr. Atkins was representing to Reliant that it would be paid by the Facility Defendants, Mr. Atkins and Mr. van der Voordt discussed Reliant's rates, staff, services, and agreements, all with the intent to cause the

Facility Defendants to breach their agreements with Reliant by not paying for services rendered and by retaining Reliant's therapists.

47.     In or around May 2015, Reliant and Mr. Atkins, on behalf of Defendants, negotiated an additional amendment to the Agreements (the "Second Addendum"). The Second Addendum was signed by Traditions and LA Management on behalf of the Facility Defendants. Among other things, the Second Addendum addressed the parties' right to terminate the Agreements and amended the noncompetition, non-solicitation and recruitment provisions contingent upon payment of all amounts due from Defendants by a date certain. Moreover, the parties agreed to address certain disputes related to Medicare reimbursement at the Springhill facility.

48.     Although not disclosed to Reliant, even before entering negotiations with Reliant on the Second Addendum, Mr. Atkins had been negotiating with Mr. van der Voordt to provide therapy services to the Facility Defendants. Other agents of Traditions or LA Management also participated in the negotiations with Mr. van der Voordt, including Lynda Hebbeln, Trina Fisk and Aaron Bloom.

49.     Even prior to entering the Second Addendum, Defendants intended to hire Reliant's therapy personnel to allow the Rehab Department to use those services in providing therapy services to the Facility Defendants. But because the Agreements contained noncompetition and nonsolicitation provisions, Defendants needed Reliant's agreement to hire its therapy personnel. Alternatively, under the Agreements, Defendants could have paid the required compensation to Reliant to obtain the right to hire Reliant's therapy personnel. In lieu of complying with the Agreements, Defendants engaged in a series of fraudulent efforts to obtain Reliant's consent to the Second Addendum, which amended the noncompetition and nonsolicitation provisions of the Agreements. Moreover, because Defendants' scheme would take time to play out, Defendants engaged in a course of conduct to induce Reliant to continue providing services in the interim.

10

50.     But even assuming the Second Addendum is valid and enforceable, Facility Defendants did not timely pay the amounts due pursuant to the Second Addendum and/or the Agreements, and thus Defendants are obligated to compensate Reliant for the improper recruitment and solicitation of its therapy personnel.

51.     Defendants entered into the Second Addendum with Reliant or induced Reliant to continue to provide services with no intention of paying outstanding invoices or otherwise performing as required under the Agreements.

52.     Specifically, Facility Defendants stopped paying Reliant's invoices and in connection with Mr. Atkins, Traditions, LA Management, Mr. van der Voordt, and Rehab Department began directly or indirectly recruiting Reliant's employees in direct competition with Reliant.

53.     Mr. Atkins, on behalf of Defendants, in order to address the Medicare dispute referenced in the Second Addendum, agreed to a joint audit between Reliant and the Facility Defendants to be carried out by an independent auditor.  On or about August 21, 2015, Mr. Atkins informed Reliant that an auditor had been selected and the audit was scheduled for August 26, 2015.

54.     Mr. van der Voordt, a former principal of the other Defendants, filed documents for Rehab Department with the Wyoming Secretary of State.  The other Defendants knew that Mr. van der Voordt had created Rehab Department and assisted him with its formation by providing the assistance of Traditions' in-house counsel.

55.     Unbeknownst to Reliant, instead of hiring a third party qualified auditor, Defendants unilaterally hired their designated successor to Reliant, Mr. van der Voordt, to conduct a pretextual "audit" the weekend before the joint audit was scheduled, cutting Reliant out of the process.  By this point, Mr. Atkins and others at Traditions and LA Management had been negotiating with Mr. van der Voordt for months for Mr. van der Voordt to provide therapy services as a replacement to

Reliant. Thus, any "audit" by Mr. van der Voordt was fatally flawed and self-interested. Reliant was wholly excluded from the audit process.

56.     When Reliant's audit team arrived in Florida on or about August 26, 2015 for the joint audit, Defendants informed Reliant that Mr. van der Voordt had already performed an audit, that the joint audit was canceled, and that the Facility Defendants were terminating their Agreements.

57.     From what Reliant has been able to learn about the "audit," it appears that only four facilities were reviewed, and that only two patient charts per facility were reviewed, for a total of eight charts were reviewed.

58.     Upon information and belief, Mr. van der Voordt's findings were not objective or accurate.

59.     Rehab Department then entered into contracts with the Facility Defendants to provide the same or materially similar services to the Facility Defendants that Reliant had been performing pursuant to the Agreements.

60.     In violation of the Agreements, Defendants aggressively recruited and/or solicited Reliant's employees to service the new contracts with Rehab Department.

61.     Upon information and belief, Facility Defendants have been reimbursed by Medicare for all or a significant portion of the services provided by Reliant, and have directly or indirectly benefitted from such reimbursement.

62.     Defendants intended for Reliant to rely on Defendants' false statements with respect to amending the Agreements, and Reliant did rely on those false statements in agreeing to amend the Agreements.

63.     Reliant has been damaged as a result of justifiably relying on Defendants' false promises.

### COUNT I – BREACH OF CONTRACT (FACILITY DEFENDANTS)

64. Reliant incorporates by reference the allegations previously set forth above.

65. Reliant performed all obligations required of it under the Agreements.

66. Without legal justification or excuse, Facility Defendants materially breached the Agreements with Reliant by failing to perform their obligations thereunder, including but not limited to failure to pay amounts due and owing, directly or indirectly recruiting Reliant's therapy personnel, and by providing confidential information to third parties.

67. As a direct and proximate result of the breach of the Agreements, Reliant has suffered damages.

68. Interest is accruing on the unpaid balance of invoices.

69. Reliant is entitled to collect attorneys' fees and costs.

### COUNT II – UNJUST ENRICHMENT (FACILITY DEFENDANTS)

70. In the alternative to Count I, Reliant asserts this claim for Unjust Enrichment.

71. Except to the extent inconsistent with the relief requested in this Count II, Reliant incorporates by reference the allegations previously set forth above.

72. Reliant has provided valuable services to Facility Defendants for which it has not been paid.

73. Reliant's services were rendered under circumstances pursuant to which Facility Defendants reasonably should have expected Reliant would expect to be compensated.

74. Facility Defendants have knowingly and willingly received, or will receive, reimbursement by Medicare, directly or indirectly, for services provided by Reliant, and have wrongfully and intentionally withheld or will withhold such amounts from Reliant.

75. Consequently, Facility Defendants have been unjustly enriched through the receipt of such services and at the expense of Reliant.

13

76.    Furthermore, Facility Defendants have a legal and fiduciary duty to immediately remit proceeds received in reimbursements from Medicare to Reliant if it has not timely paid invoices as required by the Agreements.  *See* Medicare Claims Processing Manual, Pub 100-04, Chapter 6, § 10.4.1; *see also* 42 U.S.C. § 1395cc(a)(1)(H)(ii), (g).

77.    For these reasons, a constructive trust should be imposed on any and all proceeds which have been, or hereafter are, received by Facility Defendants as reimbursement by Medicare for therapy and rehabilitation services provided by Reliant, plus interest, costs, and attorneys' fees.

### COUNT III – FRAUDULENT INDUCEMENT (MR. ATKINS, TRADITIONS, LA MANAGEMENT, AND FACILITY DEFENDANTS)

78.    Except to the extent inconsistent with the relief requested in this Count III, Reliant incorporates by reference the allegations previously set forth above.

79.    Mr. Atkins made the following false statements of material fact in connection with inducing Reliant to enter into the Second Addendum, including but not limited to:

a.    Beginning in September 2014, and continuing through August 27, 2015, Facility Defendants intended to continue their relationship with Reliant (including but not limited to discussions and correspondence between Mr. Atkins and Joe McDonough of Reliant occurring on September 12, 2014, November 8, 2014, February 27, 2015, March 1-2, 2015, and August 21, 2015);

b.    Facility Defendants were revising budgets and would pay all amounts due to Reliant after the budget process was complete (including but not limited to discussions between Mr. Atkins and Joe McDonough on November 8, 2016);

c.    The Medicare dispute and "holdback" were limited to the Springhill facility (including but not limited to discussions and correspondence between Mr. Atkins and Joe McDonough from February 27, 2015 through May 2015);

14

d.  A third-party independent audit would be conducted in connection with the Medicare dispute and "holdback" at Springhill (including but not limited to discussions and correspondence between Mr. Atkins and Joe McDonough from February 27, 2015 through May 2015);

e.  At the conclusion of the third-party independent audit, the "holdback" would be resolved and the Facility Defendants would pay Reliant for any claims deemed to be proper (including but not limited to discussions and correspondence between Mr. Atkins and Joe McDonough from February 27, 2015 through May 2015); and

f.  Defendants would only directly or indirectly recruit Reliant's therapy personnel after paying all amounts due to Reliant and would otherwise honor the noncompetition, non-solicitation and recruitment provisions of the Agreements (including but not limited to discussions and correspondence between Mr. Atkins and Joe McDonough from February 27, 2015 through May 2015).

80.  Mr. Atkins made these statements on behalf of and for the benefit of Traditions, LA Management and the Facility Defendants so those entities are liable for his fraud.

81.  Lynda Hebbeln made the following false statements of material fact in connection with inducing Reliant to enter into the Second Addendum, including but not limited to:

a.  Beginning in September 2014, and continuing through August 27, 2015, Facility Defendants intended to continue their relationship with Reliant (during ongoing discussions between Ms. Hebbeln and Reliant finance executives); and

b.  Facility Defendants were revising budgets and would pay all amounts due to Reliant after the budget process was complete (during ongoing discussions between Ms. Hebbeln and Reliant finance executives).

82.  Defendants knew, or should have known, that the statements were false.

15

83.     Defendants intended that Reliant would rely on the false statements in agreeing to the Second Addendum.

84.     Reliant did justifiably rely on Defendants' false statement to its detriment and has suffered damages as a direct and proximate result.

85.     Defendants' conduct was fraudulent and malicious, and therefore Reliant seeks exemplary damages in an amount sufficient to punish Defendants and to deter others from engaging in similar behavior.

### COUNT IV - TORTIOUS INTERFERENCE (MR. ATKINS, TRADITIONS, LA MANAGEMENT, MR. VAN DER VOORDT, AND THE REHAB DEPARTMENT)

86.     Except to the extent inconsistent with the relief requested in this Count IV, Reliant incorporates by reference the allegations previously set forth above.

87.     Reliant had an existing business relationship and enforceable contracts, *i.e.* the Botetourt Agreement and Second Addendum, with Botetourt, pursuant to which Reliant had legal rights.

88.     Reliant had existing business relationships with the therapy personnel who provided services to residents of Botetourt's facility.

89.     Mr. Atkins, Traditions, LA Management, Mr. van der Voordt, and the Rehab Department clearly knew of the Botetourt Agreement, the Second Addendum, and Reliant's business relationships with its therapy personnel or Botetourt.

90.     Mr. Atkins, Traditions, LA Management, Mr. van der Voordt, and the Rehab Department were not themselves parties to the Botetourt Agreement, the Second Addendum,  or Reliant's business relationships with its therapy personnel or Botetourt.

91. Mr. Atkins, Traditions, LA Management, Mr. van der Voordt, and the Rehab Department were not privileged to improperly interfere with the Botetourt Agreement, the Second Addendum, and Reliant's business relationships with its therapy personnel or Botetourt.

92. Mr. Atkins, Traditions, LA Management, Mr. van der Voordt, and the Rehab Department intentionally and without justification interfered with the Botetourt Agreement, the Second Addendum, and Reliant's relationships with its therapy personnel or Botetourt by, among other things:

    a. On or about August 27, 2015, Mr. Atkins, Traditions, and LA Management induced and caused Botetourt to breach the Botetourt Agreement and Second Addendum with Reliant in order to procure the therapy services for Mr. van der Voordt (a former principal of Traditions, LA Management, and the Facility Defendants) and the Rehab Department (an entity which Mr. Atkins directed Traditions legal counsel to form) for the benefit of Mr. Atkins, Traditions, and LA Management;

    b. In August and September 2015, Mr. Atkins, Traditions, and LA Management induced and caused Botetourt to solicit, recruit, and/or hire Reliant's therapy personnel for the benefit of Mr. Atkins, Traditions, and LA Management;

    c. Beginning in January 2015 and continuing through at least August 2015, Mr. Atkins, Traditions, LA Management, Mr. van der Voordt and the Rehab Department induced and caused Botetourt to breach the Botetourt Agreement and Second Addendum with Reliant in order to provide Reliant's confidential information to Mr. van der Voordt and the Rehab Department for the benefit of Mr. Atkins, Traditions, LA Management, Mr. van der Voordt and the Rehab Department;

    d. On or about August 27, 2015, Mr. van der Voordt and the Rehab Department conducted a self-interested and flawed "audit" of Reliant's services and provided that

"audit" to the other Defendants, to induce Botetourt to breach the Botetourt Agreement and Second Addendum with Reliant and to obtain the benefit of the therapy services for Mr. van der Voordt and the Rehab Department;

e. In August and September 2016, Mr. van der Voordt and the Rehab Department solicited, recruited, and/or hired Reliant's therapy personnel to provide services at Botetourt in violation of the Botetourt Agreement and Second Addendum with Reliant to obtain the benefit of the therapy services for Mr. van der Voordt and the Rehab Department;

93.     Reliant has suffered damages as a direct and proximate result of the interference by Mr. Atkins, Traditions, LA Management, Mr. van der Voordt, and the Rehab Department with the Botetourt Agreement, Second Addendum, and Reliant's business relationships with its therapy personnel or Botetourt.

94.     Reliant had an existing business relationship and enforceable contracts, *i.e.* the Chesapeake Agreement and Second Addendum, with Chesapeake, pursuant to which Reliant had legal rights.

95.     Reliant had existing business relationships with the therapy personnel who provided services to residents of Chesapeake's facility.

96.     Mr. Atkins, Traditions, LA Management, Mr. van der Voordt, and the Rehab Department clearly knew of the Chesapeake Agreement, the Second Addendum, and Reliant's business relationships with its therapy personnel or Chesapeake.

97.     Mr. Atkins, Traditions, LA Management, Mr. van der Voordt, and the Rehab Department were not themselves parties to the Chesapeake Agreement, the Second Addendum,  or Reliant's business relationships with its therapy personnel or Botetourt.

98.     Mr. Atkins, Traditions, LA Management, Mr. van der Voordt, and the Rehab Department were not privileged to improperly interfere with the Chesapeake Agreement, the Second Addendum, and Reliant's business relationships with its therapy personnel or Chesapeake.

99.     Mr. Atkins, Traditions, LA Management, Mr. van der Voordt, and the Rehab Department intentionally and without justification interfered with the Chesapeake Agreement, the Second Addendum, and Reliant's relationships with its therapy personnel or Chesapeake by, among other things:

    a.   On or about August 27, 2015, Mr. Atkins, Traditions, and LA Management induced and caused Chesapeake to breach the Chesapeake Agreement and Second Addendum with Reliant in order to procure the therapy services for Mr. van der Voordt (a former principal of Traditions, LA Management, and the Facility Defendants) and the Rehab Department (an entity which Mr. Atkins directed Traditions legal counsel to form) for the benefit of Mr. Atkins, Traditions, and LA Management;

    b.   In August and September 2015, Mr. Atkins, Traditions, and LA Management induced and caused Chesapeake to solicit, recruit, and/or hire Reliant's therapy personnel for the benefit of Mr. Atkins, Traditions, and LA Management;

    c.   Beginning in January 2015 and continuing through at least August 2015, Mr. Atkins, Traditions, LA Management, Mr. van der Voordt and the Rehab Department induced and caused Chesapeake to breach the Chesapeake Agreement and Second Addendum with Reliant in order to provide Reliant's confidential information to Mr. van der Voordt and the Rehab Department for the benefit of Mr. Atkins, Traditions, LA Management, Mr. van der Voordt and the Rehab Department;

d.  On or about August 27, 2015, Mr. van der Voordt and the Rehab Department conducted a self-interested and flawed "audit" of Reliant's services and provided that "audit" to the other Defendants, to induce Chesapeake to breach the Chesapeake Agreement and Second Addendum with Reliant and to obtain the benefit of the therapy services for Mr. van der Voordt and the Rehab Department;

e.  In August and September 2016, Mr. van der Voordt and the Rehab Department solicited, recruited, and/or hired Reliant's therapy personnel to provide services at Chesapeake in violation of the Chesapeake Agreement and Second Addendum with Reliant to obtain the benefit of the therapy services for Mr. van der Voordt and the Rehab Department;

100.    Reliant has suffered damages as a direct and proximate result of the interference by Mr. Atkins, Traditions, LA Management, Mr. van der Voordt, and the Rehab Department with the Chesapeake Agreement, Second Addendum, and Reliant's business relationships with its therapy personnel or Chesapeake.

101.    Reliant had an existing business relationship and enforceable contracts, *i.e.* the Essex Agreement and Second Addendum, with Essex, pursuant to which Reliant had legal rights.

102.    Reliant had existing business relationships with the therapy personnel who provided services to residents of Essex's facility.

103.    Mr. Atkins, Traditions, LA Management, Mr. van der Voordt, and the Rehab Department clearly knew of the Essex Agreement, the Second Addendum, and Reliant's business relationships with its therapy personnel or Essex.

104.    Mr. Atkins, Traditions, LA Management, Mr. van der Voordt, and the Rehab Department were not themselves parties to the Essex Agreement, the Second Addendum,  or Reliant's business relationships with its therapy personnel or Essex.

105.    Mr. Atkins, Traditions, LA Management, Mr. van der Voordt, and the Rehab Department were not privileged to improperly interfere with the Essex Agreement, the Second Addendum, and Reliant's business relationships with its therapy personnel or Essex.

106.    Mr. Atkins, Traditions, LA Management, Mr. van der Voordt, and the Rehab Department intentionally and without justification interfered with the Essex Agreement, the Second Addendum, and Reliant's relationships with its therapy personnel or Essex by, among other things:

a.  On or about August 27, 2015, Mr. Atkins, Traditions, and LA Management induced and caused Essex to breach the Essex Agreement and Second Addendum with Reliant in order to procure the therapy services for Mr. van der Voordt (a former principal of Traditions, LA Management, and the Facility Defendants) and the Rehab Department (an entity which Mr. Atkins directed Traditions legal counsel to form) for the benefit of Mr. Atkins, Traditions, and LA Management;

b.  In August and September 2015, Mr. Atkins, Traditions, and LA Management induced and caused Essex to solicit, recruit, and/or hire Reliant's therapy personnel for the benefit of Mr. Atkins, Traditions, and LA Management;

c.  Beginning in January 2015 and continuing through at least August 2015, Mr. Atkins, Traditions, LA Management, Mr. van der Voordt and the Rehab Department induced and caused Essex to breach the Essex Agreement and Second Addendum with Reliant in order to provide Reliant's confidential information to Mr. van der Voordt and the Rehab Department for the benefit of Mr. Atkins, Traditions, LA Management, Mr. van der Voordt and the Rehab Department;

d.  On or about August 27, 2015, Mr. van der Voordt and the Rehab Department conducted a self-interested and flawed "audit" of Reliant's services and provided that "audit" to the other Defendants, to induce Essex to breach the Essex Agreement

and Second Addendum with Reliant and to obtain the benefit of the therapy services for Mr. van der Voordt and the Rehab Department;

e.  In August and September 2016, Mr. van der Voordt and the Rehab Department solicited, recruited, and/or hired Reliant's therapy personnel to provide services at Essex in violation of the Essex Agreement and Second Addendum with Reliant to obtain the benefit of the therapy services for Mr. van der Voordt and the Rehab Department;

107.  Reliant has suffered damages as a direct and proximate result of the interference by Mr. Atkins, Traditions, LA Management, Mr. van der Voordt, and the Rehab Department with the Essex Agreement, Second Addendum, and Reliant's business relationships with its therapy personnel or Essex.

108.  Reliant had an existing business relationship and enforceable contracts, *i.e.* the Birdmont Agreement and Second Addendum, with Birdmont, pursuant to which Reliant had legal rights.

109.  Reliant had existing business relationships with the therapy personnel who provided services to residents of Birdmont's facility.

110.  Mr. Atkins, Traditions, LA Management, Mr. van der Voordt, and the Rehab Department clearly knew of the Birdmont Agreement, the Second Addendum, and Reliant's business relationships with its therapy personnel or Birdmont.

111.  Mr. Atkins, Traditions, LA Management, Mr. van der Voordt, and the Rehab Department were not themselves parties to the Birdmont Agreement, the Second Addendum,  or Reliant's business relationships with its therapy personnel or Birdmont.

112.   Mr. Atkins, Traditions, LA Management, Mr. van der Voordt, and the Rehab Department were not privileged to improperly interfere with the Birdmont Agreement, the Second Addendum, and Reliant's business relationships with its therapy personnel or Birdmont.

113.   Mr. Atkins, Traditions, LA Management, Mr. van der Voordt, and the Rehab Department intentionally and without justification interfered with the Birdmont Agreement, the Second Addendum, and Reliant's relationships with its therapy personnel or Birdmont by, among other things:

a.   On or about August 27, 2015, Mr. Atkins, Traditions, and LA Management induced and caused Birdmont to breach the Birdmont Agreement and Second Addendum with Reliant in order to procure the therapy services for Mr. van der Voordt (a former principal of Traditions, LA Management, and the Facility Defendants) and the Rehab Department (an entity which Mr. Atkins directed Traditions legal counsel to form) for the benefit of Mr. Atkins, Traditions, and LA Management;

b.   In August and September 2015, Mr. Atkins, Traditions, and LA Management induced and caused Birdmont to solicit, recruit, and/or hire Reliant's therapy personnel for the benefit of Mr. Atkins, Traditions, and LA Management;

c.   Beginning in January 2015 and continuing through at least August 2015, Mr. Atkins, Traditions, LA Management, Mr. van der Voordt and the Rehab Department induced and caused Birdmont to breach the Birdmont Agreement and Second Addendum with Reliant in order to provide Reliant's confidential information to Mr. van der Voordt and the Rehab Department for the benefit of Mr. Atkins, Traditions, LA Management, Mr. van der Voordt and the Rehab Department;

d.   On or about August 27, 2015, Mr. van der Voordt and the Rehab Department conducted a self-interested and flawed "audit" of Reliant's services and provided that

23

"audit" to the other Defendants, to induce Birdmont to breach the Birdmont Agreement and Second Addendum with Reliant and to obtain the benefit of the therapy services for Mr. van der Voordt and the Rehab Department;

e.  In August and September 2016, Mr. van der Voordt and the Rehab Department solicited, recruited, and/or hired Reliant's therapy personnel to provide services at Birdmont in violation of the Birdmont Agreement and Second Addendum with Reliant to obtain the benefit of the therapy services for Mr. van der Voordt and the Rehab Department;

114.   Reliant has suffered damages as a direct and proximate result of the interference by Mr. Atkins, Traditions, LA Management, Mr. van der Voordt, and the Rehab Department with the Birdmont Agreement, Second Addendum, and Reliant's business relationships with its therapy personnel or Birdmont.

115.   Reliant had an existing business relationship and enforceable contracts, *i.e.* the University Agreement and Second Addendum, with University, pursuant to which Reliant had legal rights.

116.   Reliant had existing business relationships with the therapy personnel who provided services to residents of University's facility.

117.   Mr. Atkins, Traditions, LA Management, Mr. van der Voordt, and the Rehab Department clearly knew of the University Agreement, the Second Addendum, and Reliant's business relationships with its therapy personnel or University.

118.   Mr. Atkins, Traditions, LA Management, Mr. van der Voordt, and the Rehab Department were not themselves parties to the University Agreement, the Second Addendum,  or Reliant's business relationships with its therapy personnel or University.

119.     Mr. Atkins, Traditions, LA Management, Mr. van der Voordt, and the Rehab Department were not privileged to improperly interfere with the University Agreement, the Second Addendum, and Reliant's business relationships with its therapy personnel or University.

120.     Mr. Atkins, Traditions, LA Management, Mr. van der Voordt, and the Rehab Department intentionally and without justification interfered with the University Agreement, the Second Addendum, and Reliant's relationships with its therapy personnel or University by, among other things:

a. On or about August 27, 2015, Mr. Atkins, Traditions, and LA Management induced and caused University to breach the University Agreement and Second Addendum with Reliant in order to procure the therapy services for Mr. van der Voordt (a former principal of Traditions, LA Management, and the Facility Defendants) and the Rehab Department (an entity which Mr. Atkins directed Traditions legal counsel to form) for the benefit of Mr. Atkins, Traditions, and LA Management;

b. In August and September 2015, Mr. Atkins, Traditions, and LA Management induced and caused University to solicit, recruit, and/or hire Reliant's therapy personnel for the benefit of Mr. Atkins, Traditions, and LA Management;

c. Beginning in January 2015 and continuing through at least August 2015, Mr. Atkins, Traditions, LA Management, Mr. van der Voordt and the Rehab Department induced and caused University to breach the University Agreement and Second Addendum with Reliant in order to provide Reliant's confidential information to Mr. van der Voordt and the Rehab Department for the benefit of Mr. Atkins, Traditions, LA Management, Mr. van der Voordt and the Rehab Department;

d. On or about August 27, 2015, Mr. van der Voordt and the Rehab Department conducted a self-interested and flawed "audit" of Reliant's services and provided that

"audit" to the other Defendants, to induce University to breach the University Agreement and Second Addendum with Reliant and to obtain the benefit of the therapy services for Mr. van der Voordt and the Rehab Department;

e.   In August and September 2016, Mr. van der Voordt and the Rehab Department solicited, recruited, and/or hired Reliant's therapy personnel to provide services at University in violation of the University Agreement and Second Addendum with Reliant to obtain the benefit of the therapy services for Mr. van der Voordt and the Rehab Department;

121.   Reliant has suffered damages as a direct and proximate result of the interference by Mr. Atkins, Traditions, LA Management, Mr. van der Voordt, and the Rehab Department with the University Agreement, Second Addendum, and Reliant's business relationships with its therapy personnel or University.

122.   Reliant had an existing business relationship and enforceable contracts, *i.e.* the Timberwood Agreement and Second Addendum, with Timberwood, pursuant to which Reliant had legal rights.

123.   Reliant had existing business relationships with the therapy personnel who provided services to residents of Timberwood's facility.

124.   Mr. Atkins, Traditions, LA Management, Mr. van der Voordt, and the Rehab Department clearly knew of the Timberwood Agreement, the Second Addendum, and Reliant's business relationships with its therapy personnel or Timberwood.

125.   Mr. Atkins, Traditions, LA Management, Mr. van der Voordt, and the Rehab Department were not themselves parties to the Timberwood Agreement, the Second Addendum,  or Reliant's business relationships with its therapy personnel or Timberwood.

126.    Mr. Atkins, Traditions, LA Management, Mr. van der Voordt, and the Rehab Department were not privileged to improperly interfere with the Timberwood Agreement, the Second Addendum, and Reliant's business relationships with its therapy personnel or Timberwood.

127.    Mr. Atkins, Traditions, LA Management, Mr. van der Voordt, and the Rehab Department intentionally and without justification interfered with the Timberwood Agreement, the Second Addendum, and Reliant's relationships with its therapy personnel or Timberwood by, among other things:

    a.  On or about August 27, 2015, Mr. Atkins, Traditions, and LA Management induced and caused Timberwood to breach the Timberwood Agreement and Second Addendum with Reliant in order to procure the therapy services for Mr. van der Voordt (a former principal of Traditions, LA Management, and the Facility Defendants) and the Rehab Department (an entity which Mr. Atkins directed Traditions legal counsel to form) for the benefit of Mr. Atkins, Traditions, and LA Management;

    b.  In August and September 2015, Mr. Atkins, Traditions, and LA Management induced and caused Timberwood to solicit, recruit, and/or hire Reliant's therapy personnel for the benefit of Mr. Atkins, Traditions, and LA Management;

    c.  Beginning in January 2015 and continuing through at least August 2015, Mr. Atkins, Traditions, LA Management, Mr. van der Voordt and the Rehab Department induced and caused Timberwood to breach the Timberwood Agreement and Second Addendum with Reliant in order to provide Reliant's confidential information to Mr. van der Voordt and the Rehab Department for the benefit of Mr. Atkins, Traditions, LA Management, Mr. van der Voordt and the Rehab Department;

d. On or about August 27, 2015, Mr. van der Voordt and the Rehab Department conducted a self-interested and flawed "audit" of Reliant's services and provided that "audit" to the other Defendants, to induce Timberwood to breach the Botetourt Agreement and Second Addendum with Reliant and to obtain the benefit of the therapy services for Mr. van der Voordt and the Rehab Department;

e. In August and September 2016, Mr. van der Voordt and the Rehab Department solicited, recruited, and/or hired Reliant's therapy personnel to provide services at Timberwood in violation of the Timberwood Agreement and Second Addendum with Reliant to obtain the benefit of the therapy services for Mr. van der Voordt and the Rehab Department;

128. Reliant has suffered damages as a direct and proximate result of the interference by Mr. Atkins, Traditions, LA Management, Mr. van der Voordt, and the Rehab Department with the Timberwood Agreement, Second Addendum, and Reliant's business relationships with its therapy personnel or Timberwood.

129. Reliant had an existing business relationship and enforceable contracts, *i.e.* the Springhill Agreement and Second Addendum, with Springhill, pursuant to which Reliant had legal rights.

130. Reliant had existing business relationships with the therapy personnel who provided services to residents of Springhill's facility.

131. Mr. Atkins, Traditions, LA Management, Mr. van der Voordt, and the Rehab Department clearly knew of the Springhill Agreement, the Second Addendum, and Reliant's business relationships with its therapy personnel or Springhill.

132.    Mr. Atkins, Traditions, LA Management, Mr. van der Voordt, and the Rehab Department were not themselves parties to the Springhill Agreement, the Second Addendum,  or Reliant's business relationships with its therapy personnel or Springhill.

133.    Mr. Atkins, Traditions, LA Management, Mr. van der Voordt, and the Rehab Department were not privileged to improperly interfere with the Springhill Agreement, the Second Addendum, and Reliant's business relationships with its therapy personnel or Springhill.

134.    Mr. Atkins, Traditions, LA Management, Mr. van der Voordt, and the Rehab Department intentionally and without justification interfered with the Springhill Agreement, the Second Addendum, and Reliant's relationships with its therapy personnel or Springhill by, among other things:

      a.    On or about August 27, 2015, Mr. Atkins, Traditions, and LA Management induced and caused Springhill to breach the Springhill Agreement and Second Addendum with Reliant in order to procure the therapy services for Mr. van der Voordt (a former principal of Traditions, LA Management, and the Facility Defendants) and the Rehab Department (an entity which Mr. Atkins directed Traditions legal counsel to form) for the benefit of Mr. Atkins, Traditions, and LA Management;

      b.    In August and September 2015, Mr. Atkins, Traditions, and LA Management induced and caused Springhill to solicit, recruit, and/or hire Reliant's therapy personnel for the benefit of Mr. Atkins, Traditions, and LA Management;

      c.    Beginning in January 2015 and continuing through at least August 2015, Mr. Atkins, Traditions, LA Management, Mr. van der Voordt and the Rehab Department induced and caused Springhill to breach the Springhill Agreement and Second Addendum with Reliant in order to provide Reliant's confidential information to Mr.

van der Voordt and the Rehab Department for the benefit of Mr. Atkins, Traditions, LA Management, Mr. van der Voordt and the Rehab Department;

d.   On or about August 27, 2015, Mr. van der Voordt and the Rehab Department conducted a self-interested and flawed "audit" of Reliant's services and provided that "audit" to the other Defendants, to induce Springhill to breach the Springhill Agreement and Second Addendum with Reliant and to obtain the benefit of the therapy services for Mr. van der Voordt and the Rehab Department;

e.   In August and September 2016, Mr. van der Voordt and the Rehab Department solicited, recruited, and/or hired Reliant's therapy personnel to provide services at Springhill in violation of the Springhill Agreement and Second Addendum with Reliant to obtain the benefit of the therapy services for Mr. van der Voordt and the Rehab Department;

135.   Reliant has suffered damages as a direct and proximate result of the interference by Mr. Atkins, Traditions, LA Management, Mr. van der Voordt, and the Rehab Department with the Springhill Agreement, Second Addendum, and Reliant's business relationships with its therapy personnel or Springhill.

136.   Reliant had an existing business relationship and enforceable contracts, *i.e.* the Colonial Agreement and Second Addendum, with Colonial, pursuant to which Reliant had legal rights.

137.   Reliant had existing business relationships with the therapy personnel who provided services to residents of Colonial's facility.

138.   Mr. Atkins, Traditions, LA Management, Mr. van der Voordt, and the Rehab Department clearly knew of the Colonial Agreement, the Second Addendum, and Reliant's business relationships with its therapy personnel or Colonial.

139.    Mr. Atkins, Traditions, LA Management, Mr. van der Voordt, and the Rehab Department were not themselves parties to the Colonial Agreement, the Second Addendum, or Reliant's business relationships with its therapy personnel or Colonial.

140.    Mr. Atkins, Traditions, LA Management, Mr. van der Voordt, and the Rehab Department were not privileged to improperly interfere with the Colonial Agreement, the Second Addendum, and Reliant's business relationships with its therapy personnel or Colonial.

141.    Mr. Atkins, Traditions, LA Management, Mr. van der Voordt, and the Rehab Department intentionally and without justification interfered with the Colonial Agreement, the Second Addendum, and Reliant's relationships with its therapy personnel or Colonial by, among other things:

   a.   On or about August 27, 2015, Mr. Atkins, Traditions, and LA Management induced and caused Colonial to breach the Colonial Agreement and Second Addendum with Reliant in order to procure the therapy services for Mr. van der Voordt (a former principal of Traditions, LA Management, and the Facility Defendants) and the Rehab Department (an entity which Mr. Atkins directed Traditions legal counsel to form) for the benefit of Mr. Atkins, Traditions, and LA Management;

   b.   In August and September 2015, Mr. Atkins, Traditions, and LA Management induced and caused Colonial to solicit, recruit, and/or hire Reliant's therapy personnel for the benefit of Mr. Atkins, Traditions, and LA Management;

   c.   Beginning in January 2015 and continuing through at least August 2015, Mr. Atkins, Traditions, LA Management, Mr. van der Voordt and the Rehab Department induced and caused Colonial to breach the Colonial Agreement and Second Addendum with Reliant in order to provide Reliant's confidential information to Mr.

van der Voordt and the Rehab Department for the benefit of Mr. Atkins, Traditions, LA Management, Mr. van der Voordt and the Rehab Department;

d.  On or about August 27, 2015, Mr. van der Voordt and the Rehab Department conducted a self-interested and flawed "audit" of Reliant's services and provided that "audit" to the other Defendants, to induce Colonial to breach the Colonial Agreement and Second Addendum with Reliant and to obtain the benefit of the therapy services for Mr. van der Voordt and the Rehab Department;

e.  In August and September 2016, Mr. van der Voordt and the Rehab Department solicited, recruited, and/or hired Reliant's therapy personnel to provide services at Colonial in violation of the Colonial Agreement and Second Addendum with Reliant to obtain the benefit of the therapy services for Mr. van der Voordt and the Rehab Department;

142.  Reliant has suffered damages as a direct and proximate result of the interference by Mr. Atkins, Traditions, LA Management, Mr. van der Voordt, and the Rehab Department with the Colonial Agreement, Second Addendum, and Reliant's business relationships with its therapy personnel or Springhill.

143.  Reliant had an existing business relationship and enforceable contracts, *i.e.* the Forest Park Agreement and Second Addendum, with Forest Park, pursuant to which Reliant had legal rights.

144.  Reliant had existing business relationships with the therapy personnel who provided services to residents of Forest Park's facility.

145.  Mr. Atkins, Traditions, LA Management, Mr. van der Voordt, and the Rehab Department clearly knew of the Forest Park Agreement, the Second Addendum, and Reliant's business relationships with its therapy personnel or Forest Park.

146. Mr. Atkins, Traditions, LA Management, Mr. van der Voordt, and the Rehab Department were not themselves parties to the Forest Park Agreement, the Second Addendum, or Reliant's business relationships with its therapy personnel or Forest Park.

147. Mr. Atkins, Traditions, LA Management, Mr. van der Voordt, and the Rehab Department were not privileged to improperly interfere with the Forest Park Agreement, the Second Addendum, and Reliant's business relationships with its therapy personnel or Forest Park.

148. Mr. Atkins, Traditions, LA Management, Mr. van der Voordt, and the Rehab Department intentionally and without justification interfered with the Forest Park Agreement, the Second Addendum, and Reliant's relationships with its therapy personnel or Forest Park by, among other things:

   a. On or about August 27, 2015, Mr. Atkins, Traditions, and LA Management induced and caused Forest Park to breach the Forest Park Agreement and Second Addendum with Reliant in order to procure the therapy services for Mr. van der Voordt (a former principal of Traditions, LA Management, and the Facility Defendants) and the Rehab Department (an entity which Mr. Atkins directed Traditions legal counsel to form) for the benefit of Mr. Atkins, Traditions, and LA Management;

   b. In August and September 2015, Mr. Atkins, Traditions, and LA Management induced and caused Forest Park to solicit, recruit, and/or hire Reliant's therapy personnel for the benefit of Mr. Atkins, Traditions, and LA Management;

   c. Beginning in January 2015 and continuing through at least August 2015, Mr. Atkins, Traditions, LA Management, Mr. van der Voordt and the Rehab Department induced and caused Forest Park to breach the Forest Park Agreement and Second Addendum with Reliant in order to provide Reliant's confidential information to Mr.

van der Voordt and the Rehab Department for the benefit of Mr. Atkins, Traditions, LA Management, Mr. van der Voordt and the Rehab Department;

d.  On or about August 27, 2015, Mr. van der Voordt and the Rehab Department conducted a self-interested and flawed "audit" of Reliant's services and provided that "audit" to the other Defendants, to induce Forest Park to breach the Forest Park Agreement and Second Addendum with Reliant and to obtain the benefit of the therapy services for Mr. van der Voordt and the Rehab Department;

e.  In August and September 2016, Mr. van der Voordt and the Rehab Department solicited, recruited, and/or hired Reliant's therapy personnel to provide services at Forest Park in violation of the Forest Park Agreement and Second Addendum with Reliant to obtain the benefit of the therapy services for Mr. van der Voordt and the Rehab Department;

149.    Reliant has suffered damages as a direct and proximate result of the interference by Mr. Atkins, Traditions, LA Management, Mr. van der Voordt, and the Rehab Department with the Forest Park Agreement, Second Addendum, and Reliant's business relationships with its therapy personnel or Forest Park.

150.    Reliant had an existing business relationship and enforceable contracts, *i.e.* the Unity Agreement and Second Addendum, with Unity, pursuant to which Reliant had legal rights.

151.    Reliant had existing business relationships with the therapy personnel who provided services to residents of Unity's facility.

152.    Mr. Atkins, Traditions, LA Management, Mr. van der Voordt, and the Rehab Department clearly knew of the Unity Agreement, the Second Addendum, and Reliant's business relationships with its therapy personnel or Unity.

153.    Mr. Atkins, Traditions, LA Management, Mr. van der Voordt, and the Rehab Department were not themselves parties to the Unity Agreement, the Second Addendum,  or Reliant's business relationships with its therapy personnel or Unity.

154.    Mr. Atkins, Traditions, LA Management, Mr. van der Voordt, and the Rehab Department were not privileged to improperly interfere with the Unity Agreement, the Second Addendum, and Reliant's business relationships with its therapy personnel or Unity.

155.    Mr. Atkins, Traditions, LA Management, Mr. van der Voordt, and the Rehab Department intentionally and without justification interfered with the Unity Agreement, the Second Addendum, and Reliant's relationships with its therapy personnel or Unity by, among other things:

a.    On or about August 27, 2015, Mr. Atkins, Traditions, and LA Management induced and caused Unity to breach the Unity Agreement and Second Addendum with Reliant in order to procure the therapy services for Mr. van der Voordt (a former principal of Traditions, LA Management, and the Facility Defendants) and the Rehab Department (an entity which Mr. Atkins directed Traditions legal counsel to form) for the benefit of Mr. Atkins, Traditions, and LA Management;

b.    In August and September 2015, Mr. Atkins, Traditions, and LA Management induced and caused Unity to solicit, recruit, and/or hire Reliant's therapy personnel for the benefit of Mr. Atkins, Traditions, and LA Management;

c.    Beginning in January 2015 and continuing through at least August 2015, Mr. Atkins, Traditions, LA Management, Mr. van der Voordt and the Rehab Department induced and caused Unity to breach the Unity Agreement and Second Addendum with Reliant in order to provide Reliant's confidential information to Mr. van der Voordt and the Rehab Department for the benefit of Mr. Atkins, Traditions, LA Management, Mr. van der Voordt and the Rehab Department;

35

    d.   On or about August 27, 2015, Mr. van der Voordt and the Rehab Department conducted a self-interested and flawed "audit" of Reliant's services and provided that "audit" to the other Defendants, to induce Unity to breach the Unity Agreement and Second Addendum with Reliant and to obtain the benefit of the therapy services for Mr. van der Voordt and the Rehab Department;

    e.   In August and September 2016, Mr. van der Voordt and the Rehab Department solicited, recruited, and/or hired Reliant's therapy personnel to provide services at Unity in violation of the Unity Agreement and Second Addendum with Reliant to obtain the benefit of the therapy services for Mr. van der Voordt and the Rehab Department;

156.    Reliant has suffered damages as a direct and proximate result of the interference by Mr. Atkins, Traditions, LA Management, Mr. van der Voordt, and the Rehab Department with the Unity Agreement, Second Addendum, and Reliant's business relationships with its therapy personnel or Unity.

157.    Reliant had an existing business relationship and enforceable contracts, *i.e.* the Baton Rouge Agreement and Second Addendum, with Baton Rouge, pursuant to which Reliant had legal rights.

158.    Reliant had existing business relationships with the therapy personnel who provided services to residents of Baton Rouge's facility.

159.    Mr. Atkins, Traditions, LA Management, Mr. van der Voordt, and the Rehab Department clearly knew of the Baton Rouge Agreement, the Second Addendum, and Reliant's business relationships with its therapy personnel or Baton Rouge.

160.   Mr. Atkins, Traditions, LA Management, Mr. van der Voordt, and the Rehab Department were not themselves parties to the Baton Rouge Agreement, the Second Addendum, or Reliant's business relationships with its therapy personnel or Baton Rouge.

161.   Mr. Atkins, Traditions, LA Management, Mr. van der Voordt, and the Rehab Department were not privileged to improperly interfere with the Baton Rouge Agreement, the Second Addendum, and Reliant's business relationships with its therapy personnel or Baton Rouge.

162.   Mr. Atkins, Traditions, LA Management, Mr. van der Voordt, and the Rehab Department intentionally and without justification interfered with the Baton Rouge Agreement, the Second Addendum, and Reliant's relationships with its therapy personnel or Baton Rouge by, among other things:

    a.   On or about August 27, 2015, Mr. Atkins, Traditions, and LA Management induced and caused Baton Rouge to breach the Baton Rouge Agreement and Second Addendum with Reliant in order to procure the therapy services for Mr. van der Voordt (a former principal of Traditions, LA Management, and the Facility Defendants) and the Rehab Department (an entity which Mr. Atkins directed Traditions legal counsel to form) for the benefit of Mr. Atkins, Traditions, and LA Management;

    b.   In August and September 2015, Mr. Atkins, Traditions, and LA Management induced and caused Baton Rouge to solicit, recruit, and/or hire Reliant's therapy personnel for the benefit of Mr. Atkins, Traditions, and LA Management;

    c.   Beginning in January 2015 and continuing through at least August 2015, Mr. Atkins, Traditions, LA Management, Mr. van der Voordt and the Rehab Department induced and caused Baton Rouge to breach the Baton Rouge Agreement and Second Addendum with Reliant in order to provide Reliant's confidential information to Mr.

van der Voordt and the Rehab Department for the benefit of Mr. Atkins, Traditions, LA Management, Mr. van der Voordt and the Rehab Department;

d.   On or about August 27, 2015, Mr. van der Voordt and the Rehab Department conducted a self-interested and flawed "audit" of Reliant's services and provided that "audit" to the other Defendants, to induce Baton Rouge to breach the Baton Rouge Agreement and Second Addendum with Reliant and to obtain the benefit of the therapy services for Mr. van der Voordt and the Rehab Department;

e.   In August and September 2016, Mr. van der Voordt and the Rehab Department solicited, recruited, and/or hired Reliant's therapy personnel to provide services at Baton Rouge in violation of the Baton Rouge Agreement and Second Addendum with Reliant to obtain the benefit of the therapy services for Mr. van der Voordt and the Rehab Department;

163.   Reliant has suffered damages as a direct and proximate result of the interference by Mr. Atkins, Traditions, LA Management, Mr. van der Voordt, and the Rehab Department with the Baton Rouge Agreement, Second Addendum, and Reliant's business relationships with its therapy personnel or Baton Rouge

164.   Defendants' conduct was fraudulent and malicious, and therefore Reliant seeks exemplary damages in an amount sufficient to punish Mr. Atkins, Traditions, LA Management, Mr. van der Voordt, and the Rehab Department and to deter others from engaging in similar behavior.

## JURY TRIAL DEMAND

165.   As allowed by FED. R. CIV. P. 38, Reliant respectfully demands a jury trial.

<u>**PRAYER FOR RELIEF**</u>

WHEREFORE, Reliant requests judgment against Defendants as follows:

A.    An award of damages in an amount to be proven at trial, including actual, direct, economic, statutory, incident, consequential, and exemplary damages;

B.    Reliant's costs, expenses, and attorneys' fees associated with the prosecution of this action;

C.    The imposition of a constructive trust on sums received by Facility Defendants as Medicare reimbursement for therapy and rehabilitation services provided by Reliant and not paid for by Facility Defendants;

D.    Pre-judgment and post-judgment interest; and

E.    All other relief to which Reliant may be entitled.


Respectfully submitted,

Keith T. Appleby, Esq.                                     -and-
BANKER LOPEZ GASSLER P.A.
501 East Kennedy Blvd., Ste. 1700                          _____/s/ Phillip A. Martin_____
Tampa, Florida
Telephone: (813) 222-1157                                  FULTZ MADDOX DICKENS PLC
Facsimile: (813) 222-3066                                  Phillip A. Martin, admitted *pro hac vice*
kappleby@bankerlopez.com                                   101 S. Fifth Street, Ste. 2700
                                                           Louisville, KY 40202
*Counsel for Plaintiff*                                    Telephone: (502) 588-2000
                                                           Facsimile: (502) 588-2020
                                                           pmartin@fmdlegal.com

### CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing was filed electronically through the Court's CM/ECF system on May 10, 2017.  Notice of this filing will be served through the Court's electronic filing system upon:

Shirin M. Vesely
Nicole M. Clausing
Keane, Rease, Vesely, & Gerdes, PA
770 Second Ave S
St. Petersburg, FL 33701

/s/ Phillip A. Martin
*Counsel for Plaintiff*